UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**GEHAN HOMES, LTD.,**

           **Plaintiff,**

**v.**                                 **Case No. 5:19-CV-1478-JKP**

**NIBCO INC.,**

           **Defendant.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

The Court has under consideration *Defendant's Motion to Dismiss First Amended Complaint* (ECF No. 16). The motion is ripe for ruling. For the reasons that follow, the Court denies the motion.

## I. BACKGROUND[1]

In February 2020, Plaintiff filed a First Amended Complaint (ECF No. 12) in response to a prior motion to dismiss. In this diversity action, Plaintiff, an entity that develops residential subdivisions and builds homes in Texas, sues NIBCO, Inc., a corporation that manufactures, markets, and distributes PEX-c pipe for use in residences. First Am. Compl. ¶¶ 2-6. To date, this case involves eighteen homes constructed by Plaintiff between 2008 and 2013 that have allegedly sustained water damage from leaking pipes manufactured by Defendant and installed in the homes by Plaintiff's contractors. *Id*. ¶¶ 19, 32. Each affected homeowner have "assigned their right to bring a claim against NIBCO to Gehan" and Plaintiff has provided Defendant "with pre-suit notice for each of the claims asserted" in the amended complaint. *Id*. ¶¶ 32-33, 83. It has also "complied with all obligations under the warranty or is otherwise excused from performance as a result of

---

[1] The background is taken from Plaintiff's allegations, which the Court views in a light most favorable to Plaintiff consistent with the standards for motions to dismiss.

NIBCO's conduct." *Id*. ¶ 47. Defendant "has been provided an opportunity to inspect each instance of piping failures in homes constructed by Gehan." *Id*.

Plaintiff alleges that Defendant induces purchases of its piping by offering a 25-year warranty for defects in materials and workmanship. *Id*. ¶ 8. As part of the inducement, Defendant represents that it has more than a century of industry experience and is an industry leader in the manufacturing of PEX piping. *Id*. Defendant advertises, markets, and sells its PEX piping while expressly representing and warranting that the piping will be free from defects in materials and workmanship for ten to twenty-five years. *Id*. ¶ 9. This express warranty was part of the bargain between Defendant and the original purchaser and transfers to the ultimate users. *Id*. The goods provided by Defendant "were not of the quality or condition expressly warranted" and the "piping suffers from undisclosed design and/or manufacturing defects that cause the piping to fail prematurely." *Id*. ¶¶ 10-11. In addition to such express warranty, Plaintiff alleges that Defendant "impliedly warranted that the tubing was of merchantable quality and was safe and fit for the purpose intended when used under ordinary circumstances." *Id*. ¶ 12.

Plaintiff further alleges that Defendant "induced consumers to purchase NIBCO piping by advertising on its packaging and piping that it complies with various internationally-recognized standards and certifications," including representing that the piping complies with "ASTM F876, which requires that PEX piping be uniformly manufactured and stabilized to resist oxidation due to chlorine exposure in potable water for more than 50 years." *Id*. ¶ 13. The piping at issue in this case did not meet the advertised standards despite the representations, and because of Defendant's manufacturing processes and materials used, the piping used by Plaintiff "resulted in a highly variable product, which was not uniformly stabilized to resist oxidation due to exposure to chemicals in potable water supply, such as chlorine and chloramine." *Id*. ¶ 15.

With knowledge of the defective piping that failed to comply with advertised certifications

and standards, Defendant knowingly placed its product in the marketplace bearing the certifications and standards. *Id*. ¶ 16. Alternatively, Defendant "recklessly misrepresented material facts about its piping when it made positive statements about its compliance with the advertised standards—including ASTM F876—without actual knowledge of the pipe's compliance." *Id*. ¶ 17. With awareness of premature pipe failures, Defendant continued to sell its pipes with advertising that the piping complied with standards, including ASTM F876. *Id*. ¶ 18. In doing so, Defendant exhibited "conscious indifference to the rights, safety and welfare of consumers, including homeowners and Gehan" and its decision to continue selling a known "variable pipe product . . . as though it were compliant with ASTM F876 and other standards and certifications printed on its label . . . involved an extreme degree of risk." *Id*.

When Defendant put its piping into the stream of commerce by selling it to suppliers, the piping "was defective and unsafe for its intended purposes" and it was similarly defective and unsafe when Plaintiff's contractors purchased it. *Id*. ¶ 22. The piping was "defectively designed and manufactured" because Defendant used materials and a manufacturing process that "resulted in a variable pipe with uneven distribution of chorine-resistant stabilizers throughout the pipe." *Id*. ¶ 23. By using a known available economically and technologically feasible design, Defendant could have avoided the variable pipe. *Id*. ¶ 24. The pipe failures have caused and will continue to cause extensive damage to homes built by Plaintiff and sold to individual homeowners. *Id*. ¶ 25.

Plaintiff's contractors relied on Defendant's warranties and misrepresentations when selecting, purchasing, and installing Defendant's products. *Id*. ¶ 20. Although pipes obtained from Defendant began to leak soon after installation, it was not immediately apparent that the cause was defective pipes that had been labeled to indicate they met certain industry standards. *Id*. ¶ 21. As a result of Defendant's defective piping, Plaintiff has responded to homeowner complaints of (1) damage to various home components (floors, walls, insulation, sheetrock, carpet, etc.); (2) damage

to personal contents (clothes and furniture); and (3) mold exposure. *Id*. ¶ 31.

Plaintiff asserts the following claims under Texas law: (1) negligence in creating, marketing, and/or selling PEX tubing; (2) negligent failure to warn of proper use of products; (3) breach of implied warranties; (4) breach of express warranties; (5) strict products liability; (6) negligent misrepresentation; (7) gross negligence; and (8) fraud. *Id*. ¶¶ 34-70. For its breach of express warranty claim, it alleges that "[t]o the extent NIBCO's express warranty purports to limit or eliminate certain contractual rights of consumers, such limitations are unconscionable and unenforceable under the circumstances." *Id*. ¶ 47.

Plaintiff also asserts that Defendant has been unjustly enriched by Plaintiff's repairs caused by Defendant's products and would have been liable to homeowners for each of the eight listed claims *Id*. ¶¶ 72-73. Plaintiff further asserts that it has made repairs under the implied warranty of habitability and pursuant to assignment of rights obtained from homeowners. *Id*. ¶¶ 74-75. It asserts that it is entitled to equitable subrogation to prevent Defendant's unjust enrichment. *Id*. ¶¶ 76-77. It alleges that "[a]ll conditions precedent to [its] claims for relief have been performed or have occurred." *Id*. ¶ 83. It seeks damages for costs of repairs, replacement or repair of damaged goods, engineering or consulting fees, temporary housing, reduction in market value, and attorney's fees. *Id*. ¶ 80. In addition, it seeks exemplary and punitive damages because its injuries resulted from the fraud and/or gross negligence of Defendant. *Id*. ¶ 84.

Defendant has moved to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See* Mot. at 1-20. In general, it argues that the Court should dismiss the complaint because Plaintiff has not satisfied the federal pleading standards. *Id*. at 15-17. More particularly, it argues that Plaintiff has failed to plead an express warranty claim because it failed to plead the basis of the bargain element and because the limited warranty does not cover the alleged design defect. *Id*. at 4-7. It also argues that Plaintiff has failed to plead the required notice necessary for the breach

of warranty claims. *Id*. at 7-9. He asserts that Plaintiff has not alleged its claims of fraud and misrepresentation with particularity as required by Fed. R. Civ. P. 9(b) and that the failure-to-warn claim must be dismissed due to pleading deficiencies. *Id*. at 10-15. Additionally, it contends that the economic loss doctrine bars Plaintiff's tort-based claims (negligence, gross negligence, and strict liability) and that the applicable statute of limitations bars all claims. *Id*. at 9-10, 17-20.

In its response (ECF No. 17), Plaintiff disagrees with each of Defendant's arguments and contentions. It maintains that it has adequately pleaded its claims and that neither the economic loss doctrine nor any statute of limitations bars its claims. With respect to the limitations defense, it argues that it has adequately pleaded the discovery rule and that its claims are timely under that rule or under the fraudulent concealment doctrine. The motion to dismiss became ripe for ruling with Defendant's reply brief (ECF No. 19).

## II. APPLICABLE LAW

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *accord Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Because jurisdiction in this case is based on diversity of citizenship, the Court must "apply Texas law," including its law regarding statutes of limitations. *Ocwen Loan Servicing, L.L.C. v. Berry*, 852 F.3d 469, 473 (5th Cir. 2017); *accord West v. Conrail*, 481 U.S. 35, 39 n.4 (1987); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752-53 (1980); *Hensgens v. Deere & Co.*, 869 F.2d 879, 880 (5th Cir. 1989). Accrual of a claim or cause of action is also governed by state law. *See Milton v. Stryker Corp.*, 551 F. App'x 125, 127 (5th Cir. 2014) (per curiam) (applying Texas law on accrual in diversity case).

"When reviewing issues of state law, federal courts look to the law of that state's highest court." *City of Alexandria v. Brown*, 740 F.3d 339, 351 (5th Cir. 2014); *accord Price v. City of San Antonio, Tex.*, 431 F.3d 890, 892 (5th Cir. 2005). Absent a final decision by the Texas Supreme

Court that "'precisely' resolves the legal issue, federal courts "must make an *Erie* guess and determine as best [they] can what the Supreme Court of Texas would decide." *Martinez v. Walgreen Co.*, 935 F.3d 396, 398 (5th Cir. 2019) (citation omitted). When compelled to make an *Erie* guess, federal courts "defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state would decide otherwise." *Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008) (citations and internal quotation marks omitted); *accord Price*, 431 F.3d at 893 n.5. The federal courts not only look to the intermediate state appellate decisions, but also to "the general rule on the issue, decisions from other jurisdictions, and general policy concerns." *Martinez*, 935 F.3d at 398 (citation omitted).

## III. STANDARDS FOR MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant seeks dismissal of Plaintiff's assorted claims based on insufficient factual allegations, untimeliness, and, for the tort-claims, being barred under the economic loss doctrine. Under Rule 12(b)(6), litigants may move to dismiss asserted claims for "failure to state a claim for which relief can be granted." As required by Fed. R. Civ. P. 8(a)(2), every pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Such requirement provides opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In general, a court addressing a motion under Rule 12(b)(6) "must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citation omitted). Furthermore, when ruling on a motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff and

draw all reasonable inferences in the plaintiff's favor." *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). Nevertheless, plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Facts alleged by the plaintiff must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To survive a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). As *Twombly* states, to avoid dismissal under Rule 12(b)(6), plaintiffs must allege facts that "nudge" an asserted claim "across the line from conceivable to plausible." 550 U.S. at 570. The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *Id.* at 563 n.8.

Furthermore, when it "is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like," a defendant may rely on a statute of limitations defense to support dismissal under Rule 12(b)(6). *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). It has been long established that plaintiffs are "not required to anticipate or

overcome affirmative defenses, such as expiration of the statute of limitations, in the complaint." *Nobre v. La. Dep't of Pub. Safety*, 935 F.3d 437, 442 (5th Cir. 2019). And even though, in this diversity case, Texas law supplies the applicable statutes of limitations, federal law supplies the pleading requirements, and it does not require plaintiffs to plead the discovery rule. *Colonial Penn Ins. Co. v. Mkt. Planners ins. Agency, Inc.*, 1 F.3d 374, 376 (5th Cir. 1993) (per curiam). "Rather, it is enough that the plaintiff plead sufficient facts to put the defendant on notice of the theories on which the complaint is based." *Levels v. Merlino*, 969 F. Supp. 2d 704, 721 (N.D. Tex. 2013) (accepting recommendation of Mag. J.); *accord Suter v. Univ. of Tex. at San Antonio*, 495 F. App'x 506, 510 (5th Cir. 2012) (per curiam).

Other defenses may likewise support dismissal under Rule 12(b)(6), but only when the operative "pleading conclusively establishes the affirmative defense." *Reagan v. U.S. Bank, Nat. Ass'n*, No. CIV.A. H-13-00043, 2013 WL 510154, at *2 (S.D. Tex. Feb. 12, 2013) (addressing res judicata defense). Notably, "the economic loss rule is not an affirmative defense." *Golden Spread Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*, 360 F. Supp. 3d 494, 517 n.21 (N.D. Tex. 2019) (citing *Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867-68 (Tex. 2007)), *aff'd sub nom. Golden Spread Elec. Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*, 954 F.3d 804 (5th Cir. 2020). "[B]ecause the existence and amount of damages" are part of the plaintiff's cause of action, defendants are "not required to assert the economic loss rule as an affirmative defense." *Equistar Chems., L.P.*, 240 S.W.3d at 867-68. Instead, the economic loss doctrine is a "court-adopted rule for interpreting whether a party is barred from seeking damages in an action alleging tort injuries resulting from a contract between the parties." *Golden Spread Coop., Inc.*, 360 F. Supp. 3d at 517 n.21 (quoting *Tarrant Cnty. Hosp. Dist. v. GE Automation Servs. Inc.*, 156 S.W.3d 885, 895 (Tex. App. – Fort Worth 2005, no pet.)). Whether to apply "the economic loss rule is a question of law for the court to decide." *Id.* at 517. And, although

a defendant may raise the defense through a motion to dismiss under Rule 12(b)(6), the courts view it through the standards applicable to such motions.

Because Defendant presents its limitations defense as a basis to dismiss all claims asserted against it, the Court first addresses that defense.

## IV. STATUTE OF LIMITATIONS

Defendant invokes the statute of limitations as a global defense against the entire action against it. *See* Mot. at 17-20. Although the amended complaint does provide factual allegations that might support such a defense, application of the defense must be evident from the face of the pleading. Here, Plaintiff specifically invokes the discovery rule in anticipation of the defense even though it had no obligation to do so under federal law. *See* First Am. Compl. ¶ 81 (only paragraph of Section XV titled "Discovery Rule"). Paragraph 81 states in full:

> Prior to failing, the defective nature of NIBCO's PEX tubing is not perceptible to Plaintiff or homeowners who purchased their homes from Plaintiff. It is not unusual for leaks to occur in some piping in homes after piping is installed. Some leaks in plumbing in new homes are expected and common and are often related to nicks in piping caused by various construction trades or installation error. Plaintiff did not become aware that the failures of NIBCO's PEX tubing was systemic until numerous homes sold by Plaintiff experienced repeated leaks. Plaintiff could not have reasonably discovered the true, latent defective nature of NIBCO piping until repeated leaks occurred.

To avoid dismissal under Fed. R. Civ. P. 12(b)(6) based upon the discovery rule, plaintiffs must either specifically invoke the rule or plead sufficient facts to invoke it. *Suter v. Univ. of Tex. at San Antonio*, 495 F. App'x 506, 510 (5th Cir. 2012) (per curiam). In this case, Plaintiff has done both. Thus, the limitations defense is not evident from the face of the pleading and dismissal on that basis is not proper.

Defendant also argues that, except for its warranty for manufacturing defects, the discovery rule does not apply to breach of warranty claims under Tex. Bus. & Comm. Code Ann. § 2.725 relating to sale of goods. Section 2.725 is part of the Texas Uniform Commercial Code ("UCC"),

which "seeks 'to make uniform the law among the various jurisdictions' to provide 'needed relief for concerns doing business on a nationwide scale.'" *Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544, 546 (Tex. 1986) (quoting Tex. Bus. & Com. Code Ann. § 1.102(b)(3) and § 2.725 comment (Tex. UCC) (Vernon 1968)).

As shown by the following language of § 2.725(b), the rejection of the discovery rule for a breach of warranty is not absolute: "A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." When this exception applies, "the warranty cause of action does not accrue until discovery of the breach." *Id.* Because the statute conditions the exception on an explicit warranty, the exception does not apply to any implied warranty. *Id.* at 546-47. In other words, implied warranties do not fall within the terms of the exception because "only *express* warranties may explicitly extend to future performance." *Id.* at 546.

Furthermore, not all express warranties qualify for the exception of § 2.725(b), because even express warranties must "meet the 'explicitness' exception" of the statute. *Id.* at 548. The Texas Supreme Court has instructed that the courts are to "construe the exception narrowly, with the emphasis on the term 'explicitly.'" *Id.* Without a "specific reference to a specific date in the future," an express warranty will not satisfy the exception. *Id.*

In this case, Plaintiff alleges an express warranty for ten to twenty-five years. First Am. Compl. ¶¶ 8-9, 47. It also alleges a breach of implied warranties without reference to any timeframe. *See id.* ¶¶ 42-45. Neither the express nor implied warranty claims invoke a particular state statute. If it were certain that Plaintiff proceeds with its warranty claims under the Texas UCC, the discovery rule would not save an untimely implied warranty claim. But because Plaintiff does not identify a statutory basis for its warranty claims, the face of the complaint arguably leaves

some ambiguity and thus does not conclusively show the inapplicability of the discovery rule to the implied warranty claim.[2]

Moreover, in response to the motion, Plaintiff invokes the fraudulent concealment doctrine as a basis to avoid the limitations defense. *See* Resp. at 13. As this Court discussed last year in a different context, the discovery rule and the fraudulent concealment doctrine are distinct means to avoid a limitations defense. *See Silo Rest. Inc. v. Allied Prop. & Cas. Ins. Co.*, 420 F. Supp. 3d 562, 582-87 (W.D. Tex. 2019). Defendant argues that Plaintiff "pleads no facts that show that Defendant took any affirmative action to prevent Plaintiff from learning its cause of action." Reply at 4. It further argues that Plaintiff is merely trying to use the purported conduct related to its fraud claim as a basis for its reliance on the fraudulent concealment doctrine. *Id*. Defendant's position ignores the legal principle that plaintiffs need not anticipate or overcome an affirmative defense when pleading their claims. Additionally, Plaintiff specifically alleges: "NIBCO simultaneously took steps to delay, prevent, and/or manipulate the chlorine resistance testing of its product, to ensure that its inability to meet the ASTM F876 and certifying agency standards printed on its label would not be discovered until it had completed its planned reformulation of its PEX-c piping." First Am. Compl. ¶ 16. Based on Plaintiff's reliance on the fraudulent concealment doctrine the Court cannot find that the First Amended Complaint conclusively shows that any claim is barred by the statute of limitations.

For all of these reasons, the Court denies the motion to dismiss to the extent Defendant relies on a statute-of-limitations defense.

---

[2] Notably, "*Safeway* is not applicable to breach of implied warranty claims" brought under the Deceptive Trade Practices Act, ("DTPA"). *Lochinvar Corp. v. Meyers*, 930 S.W.2d 182, 189 (Tex. App. – Dallas 1996, no writ). Under the DTPA, § 17.565 provides the applicable statute of limitations, and "unlike in section 2.725 of the UCC, the legislature chose to adopt the discovery rule for DTPA claims." *Id*. At this point the Court need not determine whether the implied warranty claims arise under the DTPA or § 2.725. It is enough to recognize that, based on the motion before the Court, the First Amended Complaint does not facially show that the Court should dismiss any of Plaintiff's claims.

## V. ECONOMIC LOSS DOCTRINE

Defendant also asserts a second defense – the economic loss doctrine – against Plaintiff's tort claims. *See* Mot. at 9-10. In Texas, courts often refer to the doctrine "as the economic loss rule." *LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 235 (Tex. 2014). "In actions for unintentional torts," the doctrine "has long restricted recovery of purely economic damages unaccompanied by injury to the plaintiff or his property." *Id*.

However, "the rule is not generally applicable in every situation; it allows recovery of economic damages in tort, or not, according to its underlying principles." *Id*. at 235-36. In fact, as the Texas Supreme Court has recognized, the doctrine or rule is perhaps better viewed not as "one economic loss rule broadly applicable throughout the field of torts, but rather several more limited rules that govern recovery of economic losses in selected areas of the law." *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011) (quoting Vincent R. Johnson, *The Boundary–Line Function of the Economic Loss Rule*, 66 Wash. & Lee L. Rev. 523, 534-35 (2009)). Similarly, the Texas Supreme Court re-asserted that view while also noting a view that there is no single rule, "but instead a 'constellation of somewhat similar doctrines that tend to limit liability' that seemed to work in different ways in different contexts, for not necessarily identical reasons, 'with exceptions where the reasons for limiting liability were absent.'" *LAN/STV*, 435 S.W.3d at 236 n.4 (quoting Oscar S. Gray, *Some Thoughts on "The Economic Loss Rule" and Apportionment*, 48 Ariz. L. Rev. 897, 898 (2006)).

"The economic loss rule was initially formulated to set perimeters in product liability cases." *Sharyland*, 354 S.W.3d at 415. In that context, the doctrine "applies when losses from an occurrence arise from failure of a product and the damage or loss is limited to the product itself." *Id*. (quoting *Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867 (Tex. 2007)). When "only the product itself is damaged, such damage constitutes economic loss recoverable only as

damages for breach of an implied warranty under the [Texas Business and Commerce] Code." *Signal Oil & Gas Co. v. Universal Oil Prods.*, 572 S.W.2d 320, 325 (Tex. 1978). But when the plaintiff has alleged damages to other property in addition to the product itself, the doctrine does not limit the plaintiff to non-tort remedies. *See id.*; *accord Golden Spread Elec. Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*, 954 F.3d 804, 809 (5th Cir. 2020).

While Defendant seeks to downplay Plaintiff's allegations of damages to other property, the amended complaint clearly makes such allegations even when considering Defendant's piping as a component of homes sold by Plaintiff. *See* First Am. Compl. ¶ 31. The amended complaint does not conclusively show the applicability of the economic loss doctrine and the Court cannot find that the doctrine applies merely on the allegations in this case. To the contrary, based on Plaintiff's factual allegations, the Court finds that the tort claims of the amended complaint survive dismissal under Rule 12(b)(6). The Court thus denies the motion to the extent Defendant relies on the economic loss doctrine.

## VI. STATUTORILY REQUIRED NOTICE

Defendant argues that Plaintiff has failed to allege sufficient facts demonstrating that it received notice of Plaintiff's breach of warranty claims. Mot. at 7-8. "The notice requirement for both breach of implied warranty and breach of express warranty springs from the same source— section 2.607(c)(1) of the Texas Business and Commerce Code." *U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194, 199 (Tex. App. – Houston [1st Dist.] 2003, no pet. h.). Under that statute, a "buyer must within a reasonable time after he discovers or should have discovered any breach [of warranty] notify the seller of breach or be barred from remedy." Tex. Bus. & Com. Code § 2.607(c)(1). "Failure to notify the seller of the breach, thereby allowing the seller an opportunity to cure, bars recovery on the basis of breach of warranty." *McKay v. Novartis Pharm. Corp.*, 934 F. Supp. 2d 898, 912 (W.D. Tex. 2013) (quoting *Lochinvar Corp. v. Meyers*, 930 S.W.2d 182, 189

(Tex. App. – Dallas 1996, no pet.)), *aff'd*, 751 F.3d 694 (5th Cir. 2014).

The buyer bears the "burden of alleging and proving proper notice." *Lochinvar*, 930 S.W.2d at 189. A failure to prove notice is fatal to warranty claims. *McKay*, 934 F. Supp. 2d at 912-15 (evidence at summary judgment); *U.S. Tire-Tech*, 110 S.W.3d at 201-02 (evidence presented at trial). "Ordinarily, notice is a question of fact to be determined by the trier of fact. It becomes a question of law only where there is no room for ordinary minds to differ about the proper conclusion to be drawn from the evidence." *Lochinvar*, 930 S.W.2d at 190. "This notice requirement is better described as a condition precedent for a buyer/plaintiff's cause of action" and a failure to allege that notice was provided is a basis for dismissal under Fed. R. Civ. P. 12(b)(6). *Reed v. C.R. Bard, Inc.*, No. 1:14-CV-359, 2015 WL 11110600, at *5 (E.D. Tex. Mar. 30, 2015).

In this case, Plaintiff specifically alleges that it provided Defendant with pre-suit notice. First Am. Compl. ¶¶ 33, 83. It also alleges performance or occurrence of all conditions precedent. *Id*. ¶ 83. Defendant merely quarrels with Plaintiff's allegations and wants Plaintiff to assert facts to support that it provided the alleged notice. Defendant's position has no basis in law. Plaintiff's notice allegations are sufficient to avoid dismissal at this juncture. The allegations comply with the notice requirements of Fed. R. Civ. P. 8(a) as well as the requirements for pleading conditions precedent under Fed. R. Civ. P. 9(c). The Court denies the motion to dismiss to the extent Defendant relies on the statutory notice requirement of Tex. Bus. & Com. Code § 2.607(c)(1).

## VII. EXPRESS WARRANTY CLAIM

With respect to Plaintiff's express warranty claim, Defendant argues that Plaintiff has failed to allege the "basis of the bargain" element necessary for such claim and the alleged warranty does not cover the alleged design defect. *See* Mot. at 4-7.

Texas law requires reliance as an element of a claimed breach of an express warranty. *See Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 676 (Tex. 2004) (discussing claim in context

14

of class certification). "The basis-of-the-bargain requirement 'loosely reflects the common-law express warranty requirement of reliance,' and '[r]eliance is also not only relevant to, but an element of proof of, plaintiffs' claims of breach of express warranty (to a certain extent).'" *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 99 (Tex. 2004) (footnotes and citations omitted).

Here, however, Defendant urges the Court to require "proof of actual reliance on the alleged express warranty" to satisfy *Lapray*. Mot. at 4. But proof of allegations is not necessary to overcome a Rule 12(b)(6) motion. And Plaintiff has made factual allegations to support a plausible express warranty claim. First, Plaintiff specifically alleges that the "express warranty was part of the basis of the bargain between [Defendant] and the original purchaser and transfers to the ultimate users." First Am. Compl. ¶ 9. Plaintiff further alleges that its contractors relied on Defendant's express and implied warranties. *See id.* ¶ 20.

Although Defendant argues that the amended complaint is devoid of facts demonstrating reliance by either Plaintiff or the homeowners through which Plaintiff allegedly brings its claims, Mot. at 5, it ignores the alleged reliance by the contractors without explaining or arguing why that reliance may not be properly imputed to Plaintiff. Although Defendant questions such imputed reliance in other parts of its motion to dismiss, *see id.* at 12, 16, it simply presents no significant argument for disallowing such imputed reliance on the facts of this case. Furthermore, while it briefly argues in its reply that privity of contract is required and the amended complaint lacks any allegation that any plumbing contractor assigned its claims to Plaintiff, *see* Reply at 3, the Court will not consider such argument made for the first time in the reply. Moreover, the brief argument in reply does not convince the Court that privity is necessarily required under the facts of this case. If the law supports requiring privity of contract or otherwise disallowing such imputed reliance, it is incumbent upon the defendant to fully brief and present the argument to the Court. On the current

briefing at this point in the litigation, the Court declines to decide that Plaintiff cannot use the reliance of its contractors for its express warranty claim.

Defendant next argues that its express warranty does not cover design defects. *See* Mot. at 5-7. Relying on allegations in the First Amended Complaint that the warranty covers "defects in materials and workmanship," it contends that "[s]uch warranty language extends coverage only to manufacturing defects – not design defects as alleged by Plaintiff." *Id*. at 5 (citing First Am. Compl. ¶¶ 8, 9, 47 and *Orthoflex, Inc. v. ThermoTek, Inc.*, No. 3:10-CV-2618-D, 2013 WL 4045206, at *8 (N.D. Tex. Aug. 9, 2013)).

But, despite Defendant's characterizations, the Court is not convinced that Plaintiff's warranty claim is limited to mere design defects. For product liability cases, Texas recognizes three types of defects that may present a viable claim. *See Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 426 (Tex. 1997) (recognizing marketing, design, and manufacturing defects). Under Texas law, a "manufacturing defect exists when a product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous." *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex. 2006) (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)). On the other hand, a design defect occurs when a product is made as-intended by the manufacturer but is "unreasonably dangerous" as designed. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009) (setting out three elements for a design defect claim, including "the product was defectively designed so as to render it unreasonably dangerous").

Based on Plaintiff's allegations, there is no basis to limit Plaintiff's express warranty claim to design defects alone. While Plaintiff makes allegations regarding design defects, it also makes several allegations about manufacturing defects. Defendant characterizes these latter allegations as cursory, conclusory, and devoid of factual allegations in support. Mot. at 7. The Court disagrees

with that characterization. Plaintiff has alleged both types of defects and it has alleged that that the planned output from Defendant's design differed from the intent and rendered the output unreasonably dangerous. As will be addressed in more detail in the next section, Plaintiff has also alleged a marketing defect, i.e., alleged packaging of the product as meeting certain standards. The alleged marketing defect appears consistent with an intent to produce a product that conforms to those standards rather than one that is variable. Based on the allegations of this case, the Court is not prepared at this stage of the litigation to limit the express warranty claim to design defects only.

Perhaps Defendant meant to seek dismissal of the express warranty claim to the extent Plaintiff relies on a design defect. But, if so, that is not clear from the briefing. Further, Plaintiff specifically contends that the warranty is unconscionable to the extent it may purport to limit or eliminate consumer rights. At this point, the better course is to permit the claim to proceed rather than become embroiled in what Defendant may have meant or how the alleged unconscionability of any limitation of the warranty impacts its scope. Defendant contends that its warranty only applies to design defects but in making that contention it does not rely on the express terms of its warranty; it instead relies on its interpretation of Plaintiff's allegations concerning the warranty. The precise terms of the express warranty are not currently before the Court. The express terms will have full consideration when presented on a motion for summary judgment or at trial.

For these reasons, the Court finds that Plaintiff's express warranty claim survives the motion to dismiss. The Court thus denies the motion with respect to dismissing the express warranty claim.

## VIII. FAILURE TO WARN

Defendant argues that Plaintiff has failed to allege a plausible failure-to-warn claim. Mot. at 10-11. While recognizing allegations that it provided inadequate warnings of the defect,

Defendant argues that Plaintiff (1) fails to allege what information it should have conveyed but did not and (2) alleges no causal connection between the allegedly inadequate warnings and the injuries sustained by Plaintiff or the homeowners. *Id.* at 11.

"A defendant's failure to warn of a product's potential dangers when warnings are required is a type of marketing defect." *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 426 (Tex. 1997).

> "The elements of a marketing defect cause of action are: (1) a risk of harm must exist that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product; (2) the supplier of the product knows or reasonably should foresee the risk of harm at the time the product is marketed; (3) the product has a marketing defect; (4) the lack of instructions or warning renders the product unreasonably dangerous to the ultimate user or consumer of the product; and (5) the failure to warn or instruct causes the user's injury."

*Smith v. Robin Am., Inc.*, 773 F. Supp. 2d 708, 714 (S.D. Tex. 2011) (quoting *Ranger Conveying & Supply Co. v. Davis*, 254 S.W.3d 471, 478 (Tex. App. – Houston [1st Dist.] 2007, pet. denied)), *aff'd*, 484 F. App'x 908 (5th Cir. 2012); *accord McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 427 (5th Cir. 2001) (setting out same elements with different wording).

In this case, Plaintiff alleges a marketing defect. *See* First. Am. Compl. ¶ 66 ("The NIBCO pipe at issue does not meet the advertised standards, including, but not limited to, the 50-year lifetime requirement for exposure to chlorinated potable water systems under ASTM F876."). It alleges that Defendant had a duty to warn, "knew or should have known of the risk of harm to users of its defective piping" in residential homes, "should have warned customers that its PEX 1006 Tubing was not compliant with ASTM and/or that it would fail before 10 or 25 years if exposed to chlorine," and failed to warn of such risk. *Id.* ¶ 40. It alleges:

> Although NIBCO had actual, subjective awareness of the variability in its pipe and the risks involved in its use, NIBCO nevertheless proceeded to sell and advertise its pipe as compliant with ASTM F876 and other standards and certifications with conscious indifference to the rights, safety and welfare of consumers, including homeowners and Gehan. When viewed objectively, NIBCO's decision to continue selling what it knew was a variable pipe product—and to sell it as though it were compliant with ASTM F876 and other standards and certifications printed on its

label—involved an extreme degree of risk, given the probability and magnitude of the potential harm to homeowners and Gehan.

*Id.* ¶ 18.

Plaintiff alleges that the failure to warn has injured the product's users. *See id.* ¶¶ 21, 25. It also alleges that the "failure to warn was a producing cause of Plaintiff's damages." *Id.* ¶ 41. Furthermore, Paragraph 11 of the First Amended Complaint provides additional allegations as to the first two required elements:

> NIBCO PEX piping suffers from undisclosed design and/or manufacturing defects that cause the piping to fail prematurely. The NIBCO tubing is prone to premature oxidative failure and creep rupture. NIBCO failed to take appropriate steps to ensure that its piping was safe for the intended use. NIBCO knew or should have known that its PEX piping was not suitable for use within residential plumbing systems with water treated with chlorine, chloramine, chloride and other chemicals.

And the second element is further bolstered by numerous other allegations of the First Amended Complaint.[3]

Based on the allegations of the First Amended Complaint, the Court finds that Plaintiff has sufficiently pleaded facts to support its failure-to-warn claim. The federal pleading rules do not require plaintiffs to allege specific information that the defendant should have conveyed in its warning. Nor do the rules require plaintiffs to allege the effect a different warning would have had. Defendant simply expects too much from the notice pleading requirements of the Federal Rules of Civil Procedure.

Defendant contends that a marketing defect claim does not extend to unreasonable dangers

---

[3] *See* First Am. Compl. ¶¶ 16 ("NIBCO knew that its piping was defective and did not comply with the advertised certifications and standards, but NIBCO knowingly placed its product in the marketplace bearing these certifications and standards anyway."); 67 ("NIBCO was aware of the deficiencies in its pipe, because testing by independent agencies showed piping failed to comply with industry standards and because testing in 2009 by an independent laboratory hired by NIBCO found the piping had variability and insufficient stabilizers to resist premature oxidation which results in cracking and fissures."); 84 ("NIBCO placed piping into the marketplace with knowledge that it was defective and did not meet the standards and certifications advertised on its packaging and piping."); and 86 ("NIBCO knew its product would fail prematurely yet proceeded with conscious indifference to the rights, safety and welfare of Gehan and its homeowners.").

caused by an alleged design defect. Mot. at 11 (citing *Barragan v. Gen. Motors LLC*, No. SA-15-CV-854-DAE, 2016 WL 3519675, at *7 (W.D. Tex. June 22, 2016)). In some circumstances, the contention certainly has merit. But, in this case, Plaintiff appears to properly plead its design, manufacturing, and marketing defects in the alternative, *see Waite v. Hill Servs., Inc., v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998) ("A party is generally entitled to sue and seek damages on alternative theories"), and the First Amended Complaint contains sufficient allegations "that the product was adequate as designed, but rendered unsafe by the lack of warning(s)," *see Timoschuk v. Daimler Trucks N. Am., LLC*, No. SA-12-CV-816-XR, 2014 WL 2592254, at *3 (W.D. Tex. June 10, 2014) (recognizing that the lack of such allegations made summary judgment proper on the marketing defect claim). In this case, even if the piping was adequate for a different purpose as designed, it was rendered unsafe for use in residential construction due to the lack of warning.

Defendant also argues that Plaintiff cannot succeed on the causation element because neither Plaintiff nor the homeowners purchased the alleged defective products. Mot. at 12. It contends that Plaintiff's contractors selected and purchased the products without input from Plaintiff or any homeowner. *Id*. Whether a plaintiff will ultimately succeed on an asserted claim is not the proper focus of a motion to dismiss. The Court looks to the allegations to determine whether the plaintiff has stated a plausible claim. On the allegations and briefing presented, Plaintiff has stated a plausible claim for failure to warn. On the current briefing, it is unclear whether conduct by Plaintiff's contractors may be imputed to Plaintiff. The Court will not deny Plaintiff the opportunity to present evidence on its failure-to-warn claim and thus denies the motion to dismiss as to that claim.

## IX. DESIGN DEFECT CLAIM

Defendant also very briefly argues that Plaintiff's design defect claim fails because Plaintiff has merely made conclusory references to "safer alternative designs." Mot. at 12-13. But

Plaintiff has made sufficient allegations as to safer design alternatives. *See* First. Am. Comp. ¶¶ 24, 54. This argument warrants no further discussion and the Court denies the motion to the extent Defendant seeks to rely on insufficient allegations of safer design alternatives.

## X. FRAUD AND NEGLIGENT MISREPRESENTATION

Defendant next argues that Plaintiff has not alleged its claims of fraud and negligent misrepresentation with sufficient particularity to comply with Fed. R. Civ. P. 9(b). *See* Mot. at 13-15. As required by Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Particularity, however, is considered on a case-by-case basis. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir.), *op. modified on other grounds on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id*. Stated succinctly, "Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Id*. (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)). While "Rule 9(b) by its terms does not apply to negligent misrepresentation claims, [courts have] applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims." *Id*. at 723.

Because Plaintiff's fraud and negligent misrepresentation claims are based on the same set of alleged facts, the Court applies the particularity requirements of Rule 9(b) to both claims. In this case, the "who" is Defendant generically. *See* First Am. Compl. ¶¶ 13-14, 16-17, 57, 64. While in some cases, more specificity may be necessary, the circumstances of the alleged fraud and misrepresentations in this case make further specificity unwarranted. The "what" is representing that the piping complied with various standards and the "how" is by affixing standards and certifications on the packaging of PEX 1006 Tubing. *See id.* The "where" is "throughout the state of

Texas," including various communities in San Antonio, Boerne, Helotes, and Schertz, Texas. *See id.* ¶ 32. "When" is a bit less clear, but a reading of the First Amended Complaint as a whole sufficiently states that Defendant engaged in the alleged conduct from 2008 through 2012. *See id.* ¶¶ 32, 67, 69.

The "when" and "where" might be better connected and direct, but under the circumstances of this case, the Court finds the allegations sufficient. Furthermore, based on a reading of the First Amended Complaint as a whole it is apparent that Defendant allegedly benefited from the alleged fraud and misrepresentations by procuring sales of its product for residential construction when its product was allegedly not fit for that purpose. Particularity varies case-by-case, and in this case, Plaintiff's allegations have satisfied the particularity requirements of Rule 9(b). The Court denies the motion as to the fraud and negligent misrepresentation claims.

## XI. PUNITIVE AND EXEMPLARY DAMAGES

In a footnote, Defendant argues that Plaintiff has failed to set forth entitlement to punitive or exemplary damages. Mot. at 15 n.5. It primarily premises the argument on an alleged failure of Plaintiff to adequately plead its claims of fraud and gross negligence. But such premise is immaterial at this point, because the Court has not dismissed the gross negligence claim due to the economic loss doctrine and has found that Plaintiff has adequately alleged a fraud claim. Defendant further argues that Plaintiff must prove entitlement to punitive damages through clear and convincing evidence. However, the federal pleading rules do not require evidentiary support so as to avoid dismissal under Fed. R. Civ. P. 12(b)(6). Except for jurisdictional matters not at issue in this case, evidentiary support does not come into play until summary judgment or trial. For these reasons, the Court denies the motion to dismiss the claims for punitive and exemplary damages.

## XII. GENERAL FAILURE TO MEET FEDERAL PLEADING STANDARDS

In addition to the alleged specific pleading failures already addressed, Defendant argues

generally that Plaintiff has failed to satisfy the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See* Mot. at 15-17. Defendant essentially reiterates the standards of *Iqbal* and *Twombly* that the Court has previously set out, characterizes the amended complaint as "nothing more than a bare set of generic conclusions that purportedly support Plaintiff's product liability claims," and concludes that, for each claim, "Plaintiff's attempt to plead causation is woefully inadequate." *See id.* 15-16. It complains that Plaintiff has set out allegations regarding leaks caused by sources other than its product while not sufficiently alleging how the Plaintiff's damages are connected to any defect in its piping. *Id*. at 16. It also disagrees with the apparent implication that Plaintiff's hiring of its contractors somehow imputes the contractors' reliance to Plaintiff. *Id*. Defendant contends that Plaintiff fails to allege a factual basis for any defect in its piping or how any defect caused its alleged injuries. *Id*. at 17.

As should be abundantly clear from the resolution of the alleged pleading deficiencies with respect to specific claims, Defendant often minimizes the factual allegations of Plaintiff, expects more factual detail than required by federal pleading requirements, and takes a much too strict approach as to whether allegations satisfy those pleading requirements and whether a claim is subject to dismissal under Fed. R. Civ. P. 12(b)(6). The Court finds the alleged general failures asserted herein do not warrant dismissing the amended complaint or any claim asserted therein. At this stage of the litigation, the Court is only determining whether Plaintiff has made factual allegations sufficient to state a plausible claim. Plaintiff has alleged facts that raise a right to relief above the speculative level. From the alleged facts, the Court can draw a reasonable inference that Defendant is liable for the alleged misconduct. On the facts alleged in the First Amended Complaint, the Court should permit Plaintiff to present evidence to support its claims. The Court is not deciding that Plaintiff will ultimately succeed on any claim.

## XIII. CONCLUSION

For the foregoing reasons the Court **DENIES** *Defendant's Motion to Dismiss First Amended Complaint* (ECF No. 16). Consistent with Fed. R. Civ. P. 12(a)(4)(A), Defendant shall file its answer to the First Amended Complaint within fourteen days of the date of this order.

**IT IS SO ORDERED this 31st day of August 2020.**

_____
**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**